# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LA PALOMA GENERATING., | : | Case No.: 16-12700 (CSS) |
| COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| _____ | : | Related Docket No. 1040 |

## OPINION[1]

**RICHARDS, LAYTON &
FINGER, P.A.**
Mark D.  Collins
Jason M. Madron
One Rodney Square
920 North King Street
Wilmington, DE  19801

-AND-

**GREENBERG TRAURIG LLP**
C. Stephen Davis
Colin W. Fraser
3161 Michelson Drive
Suite 1000
Irvine, CA  92612

Counsel for La Paloma
Liquidating Trust

Dated: July 25, 2018

Sontchi, C.J._____

XAVIER BECERRA
Attorney General of California
Matthew C. Heyn
Hutchinson Meltzer
Dustin Osborn
Office of the California Attorney
General
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

Counsel for California Air
Resources Board

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

The crucial background to this motion is that the La Paloma Generating Company, LLC *paid* all property taxes assessed to the Facility, and thereafter sought a refund of the amounts paid.   Now, the La Paloma Liquidating Trust (together with the La Paloma Generating Company, LLC and affiliated debtors, "La Paloma") on the one hand,[2] and the California State Board of Equalization ("SBE") and Kern County on the other, are parties to litigation in the Superior Court of the State of California, Los Angeles County concerning the taxable value of the Facility for purposes of computing the Debtors' property tax liability for tax years 2012 to 2016.   The Debtors assert that the property values used by SBE and Kern County resulted in the Debtors paying approximately $14 million in excess property taxes over the past five years.   The Debtors brought a motion pursuant to section 505 of the Bankruptcy Code requesting that the Court determine the value of the Facility and the Debtors' entitlement to related property tax refunds (the "Determination Motion").   The Court subsequently agreed to hear the taxable value issue in an appropriate order (the "Determination Order"), and set the issue for trial on March 6-9, 2018 (the Bankruptcy Court litigation known, collectively, as the "Tax Dispute").

In the meanwhile, SBE filed a motion for summary judgment ("SBE's Motion") asserting that this Court does not have jurisdiction to hear the Tax Dispute as established in the Determination Motion and Order.   SBE's Motion is premised on two grounds: (i)

---

[2] La Paloma Generating Company, LLC initially paid the taxes relating to the Determination Order, the same entity later filed the Determination Order as the debtor in possession, and the La Paloma Liquidating Trust now continues the litigation as successor under the confirmed plan of reorganization. For the purposes of this Opinion, the term "La Paloma" refers to these entities interchangeably.

that the Court does not have subject matter jurisdiction to hear the Tax Dispute pursuant to section 505 of the Bankruptcy Code; and (ii) that the Court has no jurisdiction to decide the Tax Dispute on state sovereign immunity grounds.

As reasoned further below, the Court narrows the Tax Dispute pursuant to limitations established in section 505 and grants SBE's state sovereign immunity defense as to the remainder of the refund claim. The Court will consequently GRANT SBE's Motion.

## JURISDICTION

The question of this Court's jurisdiction over the Tax Dispute is central to SBE's Motion. "A court has jurisdiction to determine whether or not it has subject matter jurisdiction over a proceeding."[3] Accordingly, the Court may determine whether to dismiss the litigation set out in the Determination Motion and Order for lack of subject-matter jurisdiction.

## STANDARD OF REVIEW

Although filed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, SBE's Motion asserts that this Court lacks jurisdiction to grant the relief initially requested in the Determination Motion. In fact, SBE has essentially moved to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(1), made applicable

---

[3] *Liquidating Trustee of the MPC Liquidating Trust v. Granite Financial Solutions, Inc. (In re MPC Computers, LLC)*, 465 B.R. 384, 387 (Bankr. D. Del. 2012) (citations omitted). *See Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377, 60 S. Ct. 317, 320, 84 L. Ed. 329 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

3

pursuant to Federal Rule of Bankruptcy Procedure, Rule 7012(b), to contest this Court's subject matter jurisdiction over the Tax Dispute.  Both parties acknowledged that the motion to dismiss standard might be applicable to the SBE Motion.[4]   The Court accordingly will exercise its discretionary power under Bankruptcy Rule 9014(c) to apply the Rule 12 standard of review to SBE's Motion.[5]

A motion under Federal Rule 12(b)(l) may be treated as either a "facial attack" on the complaint or, as in the present case, a "factual challenge" to the Court's subject matter jurisdiction.[6] "Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."[7]   In contrast, a factual challenge "concerns the actual failure of a plaintiffs claims to comport factually with the jurisdictional prerequisites," and permits the court to independently evaluate all the evidence to resolve disputes over jurisdictional facts.[8]  Although the plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged, the legal standard for surviving a Federal Rule 12(b)(l) motion is a low one.[9]  "A claim may be dismissed under Rule 12(b)(l) only if it 'clearly appears to be immaterial and made solely for the

---

[4] Del.  Bankr.  No. 16-12700, D.I. 1040, 1063. All references to the docket, cited as "D.I." *infra*, refer to this adversary proceeding unless otherwise stated.

[5] Bankr. R. Fed. P. 9014(c) provides, in relevant part: "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order." The Court finds that notice was properly afforded to both parties since since both cited and argued the possible applicability of Rule 12(b)(1).

[6]  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

[7]  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

[8]  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

[9]  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1407, 1409 (3d Cir. 1991).

purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"[10] "Moreover, dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"[11]

## BACKGROUND

### A. Procedural Background

On December 6, 2016, La Paloma filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, which the Court later authorized to be jointly administered with certain affiliated cases.[12]

On March 16, 2017, La Paloma filed the Determination Motion under *Debtors' Motion for Entry of an Order, Pursuant to 11 US.C. § 505, Determining the Taxable Value of the Facility and Debtors' Entitlement to Related Property Tax Refunds*.[13]  Pursuant to the Determination Motion, La Paloma sought entry of an order providing that this Court will exercise its authority under section 505 of title 11 of the United States Code (the "Bankruptcy Code") to (i) determine the taxable value of the Facility for tax years 2012 through 2016, and (ii) require the SBE and Kern County, California ("Kern County" and

---

[10] *Gould Electronics*, 220 F.3d at 178.

[11]  *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987), *quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974).

[12] *See* D.I. 2.

[13]  D.I. 237.

together with La Paloma and the SBE, the "Parties") meet and confer with La Paloma regarding a proposed scheduling order for pre-trial matters, as well as granting related relief.

In response to the Determination Motion, on March 30, 2017, the SBE timely filed the *Objection by the California State Board of Equalization to Debtors' Motion for Entry of an Order, Pursuant to 11 US. C. § 505, Determining the Taxable Value of the Facility and Debtors' Entitlement to Related Property Tax Refunds* ("SBE's Objection").[14] Kern County did not file a response to the Determination Motion.  On April 7, 2017, the Debtors filed the *Debtors' Reply to the Objection of the California State Board of Equalization to Debtors' Motion for Entry of an Order, Pursuant to 11 US.C. § 505, Determining the Taxable Value of the Facility and Debtors' Entitlement to Related Property Tax Refunds* in further support of the Determination Motion.[15]

The Court later heard the matter and ruled that it will "exercise jurisdiction over this issue and dispute under 505" and observed "all the factors, 505(a) have been met, at least on a facial basis."[16]  At the conclusion of the hearing, the Court subsequently entered the Determination Order providing the relief sought in the Determination Motion. Pursuant to the Determination Order, this Court made a finding that it has "jurisdiction to consider the Motion and the relief requested therein" and ordered that it "shall

---

[14] D.I. 265.

[15] D.I. 276.

[16] *See* Hr'g Tr. at 44: lines 15-18, *In re La Paloma Generating Company*, Case No. 16-12700 (CSS) (Bankr. D. Del. Apr. 12, 2017).

determine the taxable value of the Facility for tax years 2012 through 2016 pursuant to

section 505(a) of the Bankruptcy Code."[17]

In May 2017, the parties agreed on a form of scheduling order which the Court

entered (the "Stipulated Order").   Specifically, in the Stipulated Order, the Parties

stipulated to the following:

> WHEREAS, the Court having jurisdiction pursuant to 28
> U.S.C. § 1334; and this being a core proceeding pursuant to 28
> U.S.C. § 157(b)(2) and, accordingly, this Court may enter
> appropriate orders and judgments including final orders with
> respect to the tax dispute; and venue being proper before this
> Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court
> having determined that a hearing (the "Hearing") will be held
> to determine the taxable value of the Facility for tax years 2012
> through 2016 pursuant to section 505(a) of the Bankruptcy
> Code on the dates set forth below and that certain deadlines
> to facilitate discovery and other pre-Hearing matters ought to
> be set.[18]

On November 6, 2017, the Court approved a plan of confirmation, which created

the La Paloma Liquidating Trust and authorized such entity to continue litigating the Tax

Dispute post-confirmation.[19]

The Court scheduled the Tax Dispute for trial on March 6-9, 2018.  On January 30,

2018, SBE filed a *Motion for Summary Judgment as to its Jurisdictional Defenses*.[20]  The Court

heard argument on SBE's Motion at the start of trial.  At the conclusion of the argument,

the Court made some preliminary statements concerning its ruling and took the matter

---

[17]  D.I. 237.

[18]  D.I. 355 at 2.

[19]  D.I. 869, Exh. A, Art. 6 § 3.

[20]  D.I. 1040 and 1043.

under advisement.[21]  As jurisdiction to hear the Determination Motion is a gating issue, the Court canceled the substantive trial on the Determination Motion until it could issue this Opinion on SBE's Motion.  This is the Court's decision thereon.

## B.  Relevant Factual Background[22]

### i.    The Parties

La Paloma owned and operated the La Paloma electric generating facility located in Kern County, California (the "Facility") until December 4, 2017.  La Paloma is a state assessee for purposes of property taxation and has been assigned identification number 1112 by the SBE.

The SBE is now, and at all times relevant hereto has been, the state agency with jurisdiction to assess the property of designated categories of companies, including the Facility, pursuant to California Constitution article XIII, section 19, Revenue and Taxation Code Section 721.

Kern County is now, and at all times relevant hereto was, a political subdivision of the State of California which collects property taxes referable to the Facility pursuant to Revenue and Taxation Code section 745.  Kern County is named a defendant to this action pursuant to Revenue and Taxation Code section 5148(b).

---

[21]  D.I.  1111, Hr'g Tr., 108:20-117:15.

[22]  The factual background set forth herein was set forth in the *Joint Pre-Hearing Report. See* D.I. 1081, as amended D.I. 1097.

### ii.    The Property

The Facility is a combined-cycle gas turbine generation plant consisting of four separate turbines with an aggregate nameplate generating capacity of 1,048 MW, located at 1760 West Skyline Road, McKittrick in Kern County, California.

The Facility was originally constructed and placed into service in 2003.  At the time the Facility commenced operation, it operated pursuant to contracts that supported recovery of the cost to construct the Facility and provided a return on that construction cost.  In 2012, three of the four units at the Facility operated pursuant to contract for energy and capacity payments, as well as a sum for variable operating costs.  Beginning in 2013, only one unit operated pursuant to contract, and that contract lapsed in 2014.

### iii.    La Paloma's Payment of Taxes

La Paloma timely paid all property taxes assessed to the Facility, as follows:

| Tax Year | Payment Dates | Payment Amounts |
|----------|---------------|-----------------|
| 2012-13 | 4/8/2013 | $2,076,222 |
| 2013-14 | 12/6/2013
4/16/2014 | $1,599,852
$1,759,838 |
| 2014-15 | 12/5/2014
4/6/2015 | $1,414,803
$1,403,086 |
| 2015-16 | 12/4/2015
4/6/2016 | $1,239,981
$1,239,981 |
| 2016-17 | 12/14/2016
4/7/2017 | $933,838
$933, 838 |

### iv.    The Assessment of Property Taxes and State Administrative Proceedings

The SBE is required to annually assess the value of La Paloma's property pursuant to the constitutional mandate that the SBE annually value all real and personal property "owned or used" by California electricity generating companies.[23]

Each year, the SBE adopts a "unitary value" of all state-assessed property (such as that owned by electricity generating companies), transmits the assessment to the county (or counties) in which the property is located and then the county bills and collects the applicable property tax from the state assessee based on the assessment amount that has been allocated to it.

As part of this process, the SBE's State-Assessed Properties Division ("SAPD") is responsible for recommending a proposed unitary value to the Board Members for adoption.  Thus, each year, the Board Members, with the assistance of SAPD, adopt the unitary value of the taxpayer's unitary property.[24]

Taxpayers who disagree with the Board Member's adopted unitary value can file a petition for reassessment (and claim for refund) with the SBE.[25]  A taxpayer, such as La Paloma, may challenge the SBE's adopted unitary value only by filing a timely and valid petition for reassessment with the SBE.[26]  If indicated on the petition, the petition serves as a claim for refund.[27]

---

[23] Cal. Const. art. XIII § 19; Cal. Rev. & Tax. Code § 721; Cal. Code Regs., tit. 18, § 905.

[24] Cal. Rev. & Tax. Code § 721; Cal. Code Reg., tit. 18, § 904.

[25] Cal. Rev. & Tax Code §§ 731, 733.

[26] *Id.* §§ 731, 733.

[27] *Id.* § 5148(f).

In petitioning for reassessment of state-assessed properties, petitioners may participate in appeals conferences.  The purpose of an appeals conference is to exchange additional facts and evidence, obtain stipulations of fact, and refine questions of law and address new issues, in order to facilitate a more efficient and productive oral hearing or other Board action on the petition.  An attorney from the Appeals Division of SBE's Legal Department (the "Appeals Division") conducts the appeals conference.

Neither the SAPD nor the Appeals Division has the authority to effect (i) the dismissal or withdrawal of issues raised in a petition for reassessment, or (ii) the waiver of any rights of a taxpayer to raise issues in a Superior Court refund action.  Nor does the SAPD or the Appeals Division have the authority to enter into a settlement agreement with a taxpayer that would be binding on the SBE.

Following the appeals conference, the Appeals Division prepares a hearing summary or summary decision to be submitted to the SBE.[28]  The Appeals Division's hearing summary or summary decision is a recommendation for the Board Members' consideration.  It is not binding on the Board Members, who have the ultimate authority for setting value.

In situations where the taxpayer reaches an agreement with SAPD over the course of the petition process regarding the value that the will be recommended to the Board Members, that agreement does not constitute a withdrawal of the petition for reassessment.

---

[28]  Cal. Code Regs., tit. 18, § 5325.6(a)(2)(B) (formerly Cal. Code Regs., tit. 18, §§ 5325.6(a) & 5311(b)(12)).

Following the appeals conference, the petitioner has an opportunity to be heard before the Board Members. The petitioner need not pursue an oral hearing in order for the Board Members to accept a recommended value. Forgoing an oral hearing before the Board Members—or any other optional part of the petition process—does not constitute a waiver of any issues the taxpayer may raise.

To the extent there are any claims that the SAPD and the taxpayer have not resolved, the Board Members make a final administrative decision to accept or reject the recommended value on the claims raised in the petition (and claims for refund). The official time limits for hearings are: 10 minutes for opening; 10 min for SAPD; and 5 minutes for rebuttal. Then the Board may ask questions. Hearings can range from approximately 30 minutes to a couple of hours depending on the circumstances.

After the SBE makes a final administrative determination, the taxpayer may pursue relief in court to challenge the valuation of its property and claim a refund. SBE asserts that this is limited to the issues and amounts it raised in its petition. La Paloma asserts that a taxpayer is entitled to a *de novo* trial in which the Court, by statute, "shall not be restricted to the administrative record, but shall consider all evidence relating to the valuation of the property admissible under the rules of evidence."[29] Indeed, a superior court adjudicating property tax refund actions is not restricted to the

---

[29] Cal. Rev. & Tax. Code §§ 5148(e), (f), and (g), 5170.

administrative record and is required to conduct a trial *de novo*, considering all admissible evidence, on the valuation of the property.[30]

La Paloma submitted property statements, certified under penalty of perjury, pursuant to California Revenue and Taxation Code § 826, for each of the 2012 to 2016 tax years.  The statements were used by SBE in connection with determining the property tax assessments for the Facility.

### a.   2012 Tax Year

For tax year 2012, in May 2012, the SBE initially adopted a unitary value for the Facility of $401,900,000.

On or about July 20, 2012, La Paloma timely filed a Petition for Reassessment of Unitary Value for the 2012 unitary property assessment with the SBE pursuant to Revenue & Taxation Code section 721.  The Petition was designated Appeal No. SAU 12-034, Case Identification No. 621350.

On September 4, 2012, the SAPD submitted its Analysis to the Appeals Division and La Paloma, rejecting La Paloma's valuation in the 2012 Petition.  On September 28, 2012, La Paloma filed its response to the SAPD Analysis.

La Paloma and SBE staff subsequently submitted a joint recommended unitary value of $377,600,000.  Through its representatives, La Paloma confirmed in writing that it was withdrawing its request for oral argument before the Board Members.

---

[30] *Id.* § 5170.

Based on the joint recommendation of unitary value, the Appeals Division prepared a Summary Decision presenting a unitary value of $377,600,000 to the SBE for adoption.

On November 14, 2012, the Board Members accepted the recommendation of the Appeals Division and reduced the 2012 SBE-Adopted unitary value of $401,900,000 to $377,600,000.  On January 10, 2013, the SBE sent La Paloma a Notice of Decision notifying La Paloma that the SBE acted on Paloma's Petition "in public session" and "[b]y a unanimous vote."

On May 31, 2016, La Paloma timely filed a Claim for Refund for the 2012 tax year with the Kern County Board of Supervisors.  La Paloma filed the Claim for Refund pursuant to Revenue and Taxation Code Section 5096 because the 2012 Petition was not marked as a claim for refund.  La Paloma has not received any notice from the Kern County Board of Supervisors that it has considered, acted on or denied the claim for refund.

### b.  2013 Tax Year

For tax year 2013, in May 2013, the SBE adopted a unitary value for the Facility of $333,300,000.

On or about July 18, 2013, La Paloma filed a Petition for Reassessment of Unitary Value for the 2013 unitary property assessment with the SBE pursuant to Revenue and Taxation Code section 721.  The Petition was designated as a claim for refund pursuant

to Revenue and Taxation Code section 5148(f). The Petition was designated Appeal No. SAU 113-015, Case Identification No. 742923.

On September 9, 2013, the SAPD submitted its Analysis to the Appeals Division and La Paloma, rejecting La Paloma's valuation in the 2013 Petition.

In September of 2013, La Paloma filed its response to the SAPD Analysis.

On December 17, 2013, the SBE rendered a decision that denied La Paloma's petition and affirmed the 2013 SBE-adopted unitary value of $333,300,000. On December 31, 2013, the SBE sent La Paloma a Notice of Decision notifying La Paloma that the SBE acted on Paloma's Petition "in public session" and "[b]y a unanimous vote."

### c.  2014 Tax Year

For tax year 2014, in May 2014, the SBE adopted a unitary value of $300,200,000.

On or about July 21, 2014, La Paloma filed a Petition for Reassessment of Unitary Value for the 2014 unitary property assessment with the SBE pursuant to Revenue and Taxation Code section 721. The Petition was designated as a claim for refund pursuant to Revenue and Taxation Code section 5148(f). The Petition was designated Appeal No. SAU 14-020, Case Identification No. 837006.

On August 21, 2014, the SAPD submitted its Analysis to the Appeals Division and La Paloma, rejecting La Paloma's valuation in the 2014 Petition.

On November 19, 2014, the SBE rendered a decision that denied La Paloma's petition and affirmed the 2014 SBE-adopted unitary value of $300,200,000. On December

15, 2014, the SBE sent La Paloma a Notice of Decision notifying La Paloma that the SBE acted on Paloma's Petition "in public session" and "[b]y a unanimous vote."

### d.  2015 Tax Year

For tax year 2015, in May 2015, the SBE adopted a unitary value of $290,800,000.

On or about July 16, 2015, La Paloma filed a Petition for Reassessment of Unitary Value for the 2015 unitary property tax assessment with the SBE pursuant to Revenue and Taxation Code section 721.   The Petition was designated as a claim for refund pursuant to Revenue and Taxation Code section 5148(f).   The Petition was designated Appeal No SAU 15-007, Case Identification No. 901576.

On September 10, 2015, the SAPD submitted its Analysis to the Appeals Division and La Paloma, rejecting La Paloma's valuation in the 2015 Petition.

On November 17, 2015, the SBE denied La Paloma's petition and adopted the 2015 SBE-adopted value of $290,800,000 for the 2015 petition. On December 2, 2015, the SBE sent La Paloma a Notice of Decision notifying La Paloma that the SBE acted on La Paloma's Petition "in public session" and "[b]y a unanimous vote."

### e.  2016 Tax Year

For tax year 2016, in May 2016, the SBE adopted a unitary value of $168,800,000.

On or about July 1, 2016, La Paloma filed a Petition for Reassessment of Unitary Value for the 2016 unitary property tax assessment with the SBE pursuant to Revenue and Taxation Code section 721.   The Petition was designated as a claim for refund

pursuant to Revenue and Taxation Code section 5148(f). The Petition was designated Appeal No. SAU 16-012, Case Identification No. 96716.

On September 12, 2016, the SAPD submitted its Analysis to the Appeals Division and La Paloma, rejecting La Paloma's valuation in the 2016 Petition.

On October 16, 2016, La Paloma submitted its response to the SAPD Analysis, contesting the SAPD's arguments regarding valuation and appraisal of La Paloma's unitary property.

On December 14, 2016, the SBE granted La Paloma's petition, in part, and reduced the 2016 SBE-adopted value of $168,800,000 to $136,100,000. On December 16, 2016, the SBE sent La Paloma a Notice of Decision notifying La Paloma that the SBE acted on Paloma's Petition "in public session" and "[b]y a unanimous vote."

### f. Summary of SBE-Enrolled Values of La Paloma's Property

As a consequence of the petition for review process, the SBE enrolled reduced assessed values for 2012 and 2016 assessments, but made no changes to the other assessments, as reflected in the chart below, and the Kern County Assessor enrolled the following values as the state-assessed value of the Facility:

| Year | Original SBE-Assessed Value | SBE-Assessed Value After Appeal |
|------|------------------------------|----------------------------------|
| 2012 | $401,900,000 | $377,600,000 |
| 2013 | $333,300,000 | $333,300,000 |
| 2014 | $310,200,000 | $310,200,000 |
| 2015 | $290,800,000 | $290,800,000 |
| 2016 | $168,800,000 | $136,100,000 |

### g.  Discount Rate

The discount rate developed by the SBE for La Paloma was the same discount rate used to assess all other combined cycle merchant plants for the years at issue.

### h.  Land Value

As the experts for both parties in the instant litigation have essentially relied on the income approach for valuation, the SBE does not believe that land value is a material issue in the instant litigation.

Accordingly, SBE has agreed for the purposes of this litigation only, and provided that such values set forth in this paragraph cannot be used in any other proceeding for any purpose, that the land (but not the improvements) that is assessable in connection with the Facility has a value for purposes of property taxation for the years at issue in this litigation, as follows. (This limitation against using the values set forth below does not apply to two paragraphs noted with an * below.)

Lien Date: January 1, 2012
Parcel 1 $170,000
Parcel 2 $416,200
Parcel 3 $183,800
Parcel 4 $200,000
Total $970,000

Lien Date: January 1, 2013
Parcel 1 $238,400
Parcel 2 $583,800
Parcel 3 $257,800
Parcel 4 $200,000
Total $1,280,000

Lien Date: January 1, 2014
Parcel 1 $253,900

Parcel 2 $621,600
Parcel 3 $274,500
Parcel 4 $200,000
Total $1,350,000

Lien Date: January 1, 2015
Parcel 1 $276,000
Parcel 2 $675,700
Parcel 3 $298,300
Parcel 4 $200,000
Total 1,450,000

Lien Date: January 1, 2016
Parcel 1 $287,000
Parcel 2 $702,700
Parcel 3 $310,300
Parcel 4 $220,000
Total 1,520,000

*The SBE and Kern County both assessed Parcel 4 in each tax year from 2012

through 2016, inclusive. Kern County assessed Parcel 4 in the following amounts:

| Tax Year | Assessed Value | Tax |
|---|---|---|
| 2012 | $20,226 | $208.07 |
| 2013 | $371,241 | $3,848.69 |
| 2014 | $372,929 | $3,853.14 |
| 2015 | $380,377 | $3,914.99 |
| 2016 | $386,177 | $4,264.50 |
|  | TOTAL | $16,089.48 |

*Kern County's assessment of Parcel 4 constitutes double assessment prohibited

by Section 1 of Article XIII of the California Constitution because the SBE assessed Parcel

4 pursuant to its exclusive jurisdiction.  Kern County has initiated a refund with respect

to their assessments for the 2012 to 2016 tax years.

## DISCUSSION

Two jurisdictional arguments support SBE's Motion: the first argument is based on an interpretation of section 505 of the Bankruptcy Code, the other argument rests upon a state sovereign immunity defense under the Eleventh Amendment.[31]

Following the Third Circuit, to the extent the non-sovereign immunity defense can resolve SBE's Motion, there is no need to address the Eleventh Amendment defense. [32] Accordingly, this Court will first review the § 505 statutory argument and then turn to the issue of sovereign immunity.

### A.       Section 505

SBE asserts that 11 § U.S.C. 505 limits the jurisdiction of this Court to hear the Tax Dispute.  Section 505 provides that the Court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid …"[33]  Section 505(a)(2) continues:

The court may not so determine  -

…

(B) any right of the estate to a tax refund, before the earlier of –

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

---

[31] *See In re Phila. Entm't & Dev. Partners*, 879 F.3d 492, n.2 (3d Cir. 2018) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)) (finding that sovereign immunity is jurisdictional in nature).

[32] *Cf. In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 249, 261 (3d Cir. 2003) (citing *United States v. SCS Bus. & Tech. Inst.,Inc.*, 173 F.3d 890, 891 (D.C. Cir. 1999) and *Parella v. Ret. Bd. Of the R.I. Employees' Ret. Sys.*, 173 F.3d 46, 53-57 (1st Cir. 1999)) (concluding that, to the extent the appeal could not be decided on other grounds, the court would be obliged to consider a defendant's Eleventh Amendment sovereign immunity defense).

[33]  11 U.S.C. § 505(a)(1).

(ii) a determination by such governmental unit of such request …[34]

Section 505(a) is a "jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims[,]"[35] and is intended to clarify the bankruptcy court's jurisdiction over tax claims.[36]

In *City of Perth Amboy v. Custom Distribution Services*, the debtor commenced an adversary proceeding against the city of Perth Amboy seeking a reassessment of its real estate obligations and tax refund, among other arguments. The city argued that because the debtor has not made proper refund requests under New Jersey law for any of the years at issue, the court was without authority to decide the debtor's right to a refund. Specifically, the city noted that § 505(a)(2)(B)(i) allows the bankruptcy court to determine any right to a tax refund before "120 days after the trustee/[debtor in possession] properly requests such refund from the governmental unit from which such refund is claimed …"[37]

In its decision, the court focused on the words "properly requests" and found them to be "susceptible to more than one meaning."[38] The Third Circuit held:

> In light of the legislative history of § 505(a), the overwhelming case authority interpreting it as precluding the bankruptcy court from adjudicating claims for refund of taxes that were not seasonally contested in accordance with procedures set out by the taxing authority, and the policy considerations underpinning § 505, we are persuaded that the

---

[34] *Id.* § 505(a)(2)(B).

[35] *City of Perth Amboy v. Customer Distribution Servs, Inc. (In re Custom Distribution Servs. Inc.)*, 224 F.3d 235, 239–40 (3d Cir. 2000).

[36] *Id.* (citations omitted).

[37] 11 U.S.C. § 505(a)(2)(B)(i).

[38] *Custom Distribution Servs.*, 224 F.3d at 241.

Bankruptcy Court here did not have jurisdiction to order the City to refund excess payments for those years in which Custom paid the taxes but did not contest them in accordance with N.J.S.A. 54:3-21.[39]

Furthermore, in *In re ANC Rental Corp.*,[40] the debtor sought a tax refund and argued, in addition to other things, that § 505(a)(2)(B)(i) only required that the debtor properly request refunds.[41]   Judge Walrath disagreed and held that state law required that the debtor seek an exemption prior to the tax assessment, which the debtor did not do, and thus, the bankruptcy court did not have jurisdiction to hear the debtor's section 505(a) request.[42]

### i.    Limitation on Refund (Tax Years 2013-2016)

SBE argues that section 505 limits this Court's subject-matter jurisdiction for the following reasons: (i) no "trustee" had requested a refund (as La Paloma requested the refund prior to the Petition Date); and (ii) La Paloma only requested $3.5 million in refunds from SBE and as such would be capped at "such amount" properly requested (i.e. the Court could not award a higher refund than La Paloma previously requested).

---

[39] *Id.* at 243–44.  *See also In re Venture Stores, Inc.*, 54 F. App'x 721, 724 (3d Cir. 2002); *Planavsky v. County of Broome (In re Planavsky)*, No. 01-63125, 2010 WL 598652, at *6 (Bankr. N.D.N.Y. Feb. 17, 2010) ("[T]he Court does not have jurisdiction to address the requests by the Debtor for a refund pursuant to Code § 505 since the Debtor has not followed the procedures set forth under Article 7 of New York Real Property Tax Law. Therefore, the Court concludes that it lacks authority to make any such determination and will grant the Motions to Dismiss the Debtor's Amended Complaint to the extent that the Debtor seeks refunds of taxes previously paid."); *Compare In re Indianapolis Downs, LLC*, 462 B.R. 104, 110 (Bankr. D. Del. 2011) (finding the Bankruptcy Court had jurisdiction under section 505(a).  However, the Debtor does not use the Tax Motion to request a refund for the taxes it has already paid—the issue on which it lost its initial appeal in August. Rather, the relief sought in the Tax Motion is limited to fixing the Debtor's present and future tax obligations.).

[40] *In re ANC Rental Corp.*, 316 B.R. 146 (Bankr. D. Del. 2004).

[41] *Id.* at 148.

[42] *Id.* at 149.

### a.   "Trustee has to request a refund"

Section 505 (a)(2)(B)(i) states:

(2) The court may **not** so determine –

(B) any right of the estate to a tax refund, before the earlier of –

(i) 120 days after **the trustee** properly requests such refund from the governmental unit from which such refund is claimed . . . [43]

In support of their "plain meaning" argument, SBE cites to the now repealed

Bankruptcy Act, section 2a(2A) as legislative history for section 505.[44]  Section 2a(2A) of

the Act gave the bankruptcy court jurisdiction to:

> [h]ear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.[45]

Under the Act, the bankruptcy court only had jurisdiction over unpaid taxes (but

could authorize the estate representative to prosecute the appeal of a refund in a non-

bankruptcy forum, if the time for taking the appeal had not expired).  SBE couples the

Act with the use of "the trustee" in section 505(a)(2)(B)(i) to argue that the Code's grant

---

[43]  11 U.S.C. § 505(a)(2)(B)(i) (emphasis added).

[44]  *Id.* § 2a(2A) (repealed 1978).

[45]  *Id.* § 2a(2A) (emphases added).  "The language of § 2a(2A) made clear that the grant of jurisdiction was limited to the adjudication of unpaid taxes or of refunds if the debtor was first refused a refund in a non-bankruptcy forum and the applicable appeals period had not expired."  *In re Custom Distribution Servs. Inc.*, 224 F.3d 235, 241 (3d Cir. 2000) ("The enactment of § 505 in 1978 did not produce substantive changes. The bills filed both in the House and in the Senate precluded the bankruptcy court from exercising jurisdiction over refund claims unless the debtor had seasonably sought an appeal with the appropriate tax assessing entity.").

of jurisdiction to determine a refund is very limited and should be construed narrowly. In other words, SBE is asserting that the Court does not have jurisdiction because the *debtors* did not request a refund from the governmental unit.

Unlike Chapter 7 cases where the "debtor" and the "trustee" are "two distinct persons,"[46] in a Chapter 11 case a "debtor" is a "debtor in possession" unless there is a separate appointment of a trustee.[47]  Moreover, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties of a trustee serving in a case under this chapter."[48]  "As such, the debtor is the trustee in Chapter 11 (unless a separate trustee is appointed)."[49]  Furthermore, as this Court has previously held that a "debtor" and a "debtor in possession" are not separate entities; by way of explanation:

> The "debtor" is a corporate entity and exists both pre-petition and post-petition.  Consider the following statement, "Willie Mays is a person that has been elected into the Hall of Fame."  Did Willie Mays come into existence the moment he was elected to the Hall of Fame (i.e., Friedman's position that the debtor doesn't exist before the bankruptcy filing)?  Of course not.  Did Willie Mays cease to exist upon election into the Hall of Fame (Roth's position that debtor ceases to exist on the petition date)?  Of course not.  Under the rules of English grammar and syntax, the phrase "that has been elected" in this example is not a temporal restriction.  Rather, it is an adjective that sets forth what it is that makes the particular person or thing of interest to the reader.  If one is interested in great baseball players it is significant to know that Willie Mays is in the Hall of Fame.  If one is interested with bankruptcy it is significant to know whether the company has actually filed bankruptcy.[50]

---

[46] *Shifano v. Lenmark Financial Services, Inc. (In re Shifano)*, No. 12-11148 CSS, 2013 WL 85203, at *3 (Bankr. D. Del. Jan. 8, 2013).

[47] 11 U.S.C. § 1101.

[48] *Id.* § 1107(a).

[49] *Shifano*, No. 12-11148 CSS, 2013 WL 85203 at *3 n. 16.

[50] *Friedman's Inc. v. Roth Staffing Companies, L.P. (In re Friedman's Inc.)*, No. 09-10161 CSS, 2011 WL 5975283, at *4 (Bankr. D. Del. Nov. 30, 2011).

Thus, SBE's argument fails as it is irrelevant whether either "the trustee" or the "debtor"

as an entity prior to its bankruptcy requested such return.

### b. Limitation to Amounts Requested

Accordingly, pursuant to section 505(a)(2)(B)(i), La Paloma has to "properly

request" such refund.  SBE asserts that a "proper" request is one that meets the

procedural law requirements of the taxing jurisdiction.  SBE continues that as La Paloma

only requested a refund of $3.5 million before the Board they are now "capped" and

cannot receive more than that amount.  La Paloma disagrees (and seeks a refund of

approximately $14 million).

> Section 5143 of the California Revenue and Tax Code states:

> If a claim for refund relates only to the validity of a portion of an
> assessment, an action may be brought under this article only as to that
> portion.[51]

Furthermore, section 5142 of the California Revenue and Tax Code states:

> No action shall be commenced or maintained under this article, except
> under Section 5148, unless a claim for refund has first been filed pursuant
> to Article 1 (commencing with Section 5096).

> No recovery shall be allowed in any refund action upon any ground not
> specified in the refund claim.[52]

In *Mission Housing Development Co. v. City & County of San Francisco*, reviewing sections

5142 and 5142 of the California Revenue and Tax Code together, the court held:

> … we conclude that a taxpayer who files a refund action can recover no
> more than the amount he sought in his underlying claim.[53]

---

[51] Cal. Rev. & Tax. Code § 5143 (West).

[52] Cal. Rev. & Tax. Code § 5142.

[53] *Mission Hous. Dev. Co. v. City & Cty. of San Francisco*, 81 Cal. App. 4th 522, 527, 97 Cal. Rptr. 2d 8, 11 (2000).

La Paloma claims that *Mission Housing* is distinguishable and inapplicable to the matter *sub judice*.

In *Mission Housing Development Co.*, owners of locally-assessed housing projects filed assessment appeals which were not denominated as claims for refunds.[54]  Because the local Assessment Appeals Board ("AAB") (a different entity from the SBE, which decides state-assessed property issues) failed to decide the appeals within the two-year statutory limit, the Court of Appeal had previously issued an order enrolling Mission's opinion of value (essentially a default judgment in Mission's favor).  Mission had also filed a separate claim for refund based on amended opinions of value that were higher than the nominal values stated in their original appeals.[55]  The case reached the Court of Appeal a second time to decide a new issue: should the refund be based on the enrolled nominal value or on the value placed on the claim for refund?  The Court of Appeal concluded that Mission's refund would be based on the claim for refund.[56]

La Paloma claims that the holding in *Mission Housing* is limited to its facts and inapplicable for several reasons.  First, La Paloma asserts that it is entitled to a *de novo* trial under Section 5170 of the California Revenue and Taxation Code, which did not apply in *Mission Housing* because that case involved locally assessed property subject to a different statutory scheme.   SBE states that the *de novo* trial is irrelevant because in *Mission Housing*, the court determined the value of the property completely in favor of

---

[54] *Id.* at 526.

[55] *Id.* at 526.

[56] *Id.* at 528.

the taxpayer but nonetheless limited refunds to an amount no greater than what the taxpayer sought in their prior claim for refunds.[57]

SBE is correct. Although a trial court is not limited to the administrative record, the trial court's review is limited to whether there is "substantial evidence" to support the administrative determination.[58] Furthermore, the record considered by the trial court has *nothing* to do with the amount the court can award. As a result, the right to a *de novo* trial does not obfuscate the *Mission Housing* holding.

Second, La Paloma asserts that *Mission Housing* is limited to the peculiar procedural posture of that case, the distinguishing feature of which was the equivalent of a default judgment enrolling the taxpayer's opinion of value as a penalty for delayed action on the administrative application. SBE responds that the taxpayers in *Mission Housing* had already received a court determination that the value of the property was the lower of the two values posited by the taxpayers.

---

[57] *Mission*, 81 Cal. App. 4th at 527.

[58] *S. Pac. Pipe Lines, Inc. v. State Bd. of Equalization*, 14 Cal. App. 4th 42, 55, 17 Cal. Rptr. 2d 345 (1993) (citations omitted). The court described *de novo* review as follows:

> Revenue and Taxation Code section 5170, vested the trial court in a tax refund action with the power of independent review, allowing it to consider all evidence relating to the valuation of the property, not just the evidence in the administrative record. That section is specifically applicable to assessments made under California Constitution, article XIII, section 19.

> Where the trial court exercises the power of independent review, we determine whether substantial evidence supports the trial court's findings as opposed to those of the administrative agency involved. **Accordingly, our power begins and ends with the determination as to whether, on the entire record, there is substantial evidence contradicted or uncontradicted, to support the determination.**

*Id.* (emphasis added).

Again, SBE is correct. In the second appeal, the *Mission Housing* court still ruled that, under Section 5143 of the California Revenue and Taxation Code, the taxpayers were limited to refunds based on the higher of the values put forward by the taxpayers.  As a result, if this Court were to allow these proceedings to move forward, and if La Paloma were to achieve complete success at trial, La Paloma would still be in the same position as the taxpayers in *Mission Housing*—having a legal determination that their new valuation of the Facility is correct, but still being limited by the lower amounts asserted in their prior administrative refund claims.

Third, La Paloma asserts that local assessment proceedings are markedly different from state-assessed appeals before the SBE.  SBE responds that La Paloma's reading of *Mission Housing* as being limited to local assessment proceedings ignores the plain language of Section 5143.  In SBE's own words:

> That provision states in its entirety: "If a claim for refund relates only to the validity of a portion of an assessment, an action may be brought under this article only as to that portion." See CAL. REV. & TAX. CODE § 5143 (emphasis added).  Section 5143 is contained in article 2, chapter 5, part 9, division 1 of the California Revenue and Taxation Code. Just like the provisions for seeking a refund of local tax assessments (CAL. REV. & TAX. CODE § 5146), the provision allowing taxpayers to bring "an action to recover taxes levied on *state–assessed property*" is also in that same article. CAL. REV. & TAX. CODE § 5148 (emphasis added).  Thus, there should be no question that Section 5143 applies to actions seeking refunds with respect to state-assessed property just as it did to the local assessment refund action of local in *Mission Housing*.[59]

The Court is in agreement with SBE, there is nothing in the statutes or case law that would limit *Mission Housing* to state-assessed property appeals.

---

[59] SBE Reply Br. at p. 15.

Fourth, La Paloma makes a policy argument:

> [i]f a refund claim is capped at a taxpayer's opinion of value stated in a petition for reassessment, a taxpayer would be required to either state an 'artificially low' value to preserve its rights, or otherwise attempt to value large complex systems of assets within a fifty-day period, which is not realistically feasible.[60]

SBE states that this policy argument is pure speculation, with no supporting evidence or greater explanation. The Court agrees with SBE.

Lastly, at oral argument, La Paloma asserted that *Mission Housing* is also distinguishable because in that case the taxpayer made a statement as to the amount of their requested refund. In contrast, on the forms submitted by La Paloma, La Paloma listed the "Petitioner's Opinion" concerning the unitary value of the property; and not the amount of the requested refund.[61] This is a distinction without difference. Application of the tax formula to the "unitary value" is a matter of mathematics, so whether La Paloma identified its opinion of unitary value or the resulting amount sought in the refund is of no import. Either leads to the same "amount of refund requested," and, pursuant to *Mission Housing*, would cap the amount of tax refund that can be awarded.

### c. Conclusion

As stated above, La Paloma is limited by the holding in *Mission Housing* to the amount "properly request[ed]," in other words, to the amount of approximately $3.5

---

[60] Debtors Opp. at p. 30.

[61] *See, e.g., Declaration of Colin W. Fraser in Support of La Paloma Liquidating Trust's Opposition to the California State Board of Equalization's Motion for Summary Judgment on Jurisdictional Issues,* Exhs. 6, 7 , 8, 9, and 10 (State Board of Equalization Petition for Unitary Property Assessment forms for various tax years) (D.I. 1065).

million sought before the Board.  Although La Paloma has the right to a trial *de novo* in California state court and may expand upon the record established before the Board, it would be limited to seeking the amount sought before the SBE.

### ii.    *2012 Tax Year/Exhaustion of Remedies*

SBE also argues that the Court cannot award any refund for 2012 because La Paloma never fully litigated the 2012 amounts before the SBE.  After La Paloma filed its petition for reassessment, La Paloma reached an agreement with the SBE staff as to the Facility's unitary value and that value was presented to, and adopted by, the Board. Nonetheless, La Paloma argues that notwithstanding the failure to litigate the 2012 value in the proceeding before the Board, it met the exhaustion requirements because it filed a claim for a refund and the Board issued its decision.

The purpose of the "exhaustion" requirement is to "ensure that the Board receives sufficient notice of the claim and its basis" and to give the Board "an opportunity to correct any mistakes, thereby conserving judicial resources."[62]  "The issues raised in the claim for refund establish and restrict the claims that may be raised in any subsequent judicial challenge."[63]

> The rule requiring exhaustion of administrative remedies is well settled. "In general, a party must exhaust administrative remedies before resorting to the courts.  Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.'"

---

[62] *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1108, 324 P.3d 50, 64 (2014) (internal quote marks and citations omitted).

[63] *Id.*

The exhaustion rule "'is not a matter of judicial discretion, but is a fundamental rule of procedure ... binding upon all courts.'" (We have explained that "[t]he exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary))."[64]

The exhaustion doctrine has various exceptions:

The doctrine does not apply when the administrative remedy is inadequate. For example, it does not apply when the administrative procedure is too slow to be effective, or when irreparable harm would result by requiring exhaustion of administrative remedies before seeking judicial relief, or when it is clear that seeking administrative remedies would be futile.[65]

However, by consenting to the 2012 unitary assessment of the property, none of these exceptions are met (nor does La Paloma plead that any such exceptions are relevant).

For example, in *Jimmy Swaggart Ministries v. Board of Equalization of California*,[66] a taxpayer challenged California sales taxes as unconstitutional, obtained partial relief from the Board, and obtained a final decision. The taxpayer then sued, claiming that the taxes violated the commerce and due processes clauses because, as an out-of-state distributor, it had an insufficient nexus to California.[67] The Supreme Court held that the taxpayer was barred from raising these issues because the taxpayer did not exhaust its remedies before the Board.[68]

---

[64] *Williams & Fickett v. Cty. of Fresno*, 2 Cal. 5th 1258, 1267–68, 395 P.3d 247, 252 (2017) (citations omitted).

[65] *City of San Jose v. Operating Engineers Local Union No. 3*, 49 Cal. 4th 597, 609, 232 P.3d 701, 708 (2010) (citations omitted).

[66] *Jimmy Swaggart Ministries v. Bd. of Equalization of California*, 493 U.S. 378 (1990).

[67] *Id.* at 397.

[68] *Jimmy Swaggart Ministries*, 493 U.S. at 398 ("The record in this case makes clear that appellant, in its refund claim before the Board, failed even to cite the Commerce Clause or the Due Process Clause, much less articulate legal arguments contesting the nexus issue. The Board's hearing officer specifically noted, in forwarding his decision to the Board, that appellant's "[c]ounsel does not argue nexus," and indeed the

Likewise, in the case *sub judice*, La Paloma cannot agree to a unitary value of the Facility with the SBE and then raise new issues on appeal as to that agreed upon valuation (or any other issue). This is different from whether La Paloma raised sufficient information about the value of its claim or the value of the property for the tax year 2012. Here, La Paloma failed to present any issue for final determination and *agreed* as to the value. Consequently, La Paloma is barred for seeking re-adjudication of the assessment on the Facility for 2012 because La Paloma failed to exhaust its remedies before the SBE related thereto.

## B. Sovereign Immunity

Given that the section 505 analysis does not fully resolve the Tax Dispute, the Court will now consider SBE's claim of immunity from suit.[69] SBE's Motion argues that, regardless of the result in the section 505 argument *supra*, the Court is unable to grant relief as to the entirety of the Tax Dispute because of SBE's immunity from suit in federal court as established by the Eleventh Amendment. To the extent SBE has properly set out a state sovereign immunity defense, and has not otherwise waived its immunity, the Court must dismiss the Tax Dispute as it relates to SBE.

---

parties stipulated before the trial court that appellant's request for a refund was based on its First Amendment claim. Accordingly, both the trial court and the Court of Appeal declined to rule on the nexus issue on the ground that appellant had failed to raise it in its refund claim before the Board. This unambiguous application of state procedural law makes it unnecessary for us to review the asserted claim." (citations omitted throughout)).

[69] The Third Circuit has clarified that state sovereign immunity is not a unitary concept, and in fact encompasses at least protections from suit in federal court and a separate immunity from liability. Because SBE has only sought protection under its Eleventh Amendment immunity, this Court limits its review to whether SBE has immunity from suit in this federal court proceeding. *See Lombardo v. Pa. Dept. of Public Welfare*, 540 F.3d 190, 194-97 (3d Cir. 2008).

The Eleventh Amendment to the United States Constitution states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[70]  The Supreme Court has interpreted the Eleventh Amendment as "one particular exemplification of … [state sovereign] immunity[,]"[71] which notably bars private suits and the entrance of money judgments against non-consenting states in federal court.[72]

An Eleventh Amendment sovereign immunity defense "differs from a defense on the merits in the key respect that a defendant may raise the defense of sovereign immunity at any time in the absence of an explicit waiver."[73]  These heightened protections aid in respecting the status of states as individual sovereigns.[74]  Because a waiver must be an "intentional relinquishment or abandonment of a known right … [courts] must indulge every reasonable presumption against waiver."[75]

---

[70] U.S. Const. Amend. XI.

[71] *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002); *see also Betts v. New Castle Youth Dev. Center*, 621 F.3d 249, 254 n.4 (3d Cir. 2010) (quoting *Fed. Mar. Comm'n*, 535 U.S. at 753) (noting that sovereign immunity includes both an immunity from suit under the Eleventh Amendment and also a separate immunity from liability).

[72] *See Hans v. Louisiana*, 134 U.S. 1 (1890) ("… it is inherent in the nature of sovereign not to be amendable to the suit of an individual [a state's] consent."); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

[73] *In re Hechinger*, 335 F.3d at 251 (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)); *see also Lombardo*, 540 F.3d at 198 (citing *Coll. Sav. Bank*, 527 U.S. 627, 680 (1999) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

[74] *In re Flonase Antitrust Litigation*, 879 F.3d 61, 70 (3d Cir. 2017) (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

[75] *Id.* (quoting *Coll. Sav. Bank*, 527 U.S. at 682 and *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)) (internal quotations omitted).

Generally speaking, federal courts "will find a waiver either if the State voluntarily invokes [their] jurisdiction … or else if the States makes a clear declaration that it intends to submit itself to our jurisdiction."[76]  Alternatively, Eleventh Amendment immunity is waived for "proceedings brought pursuant to 'Laws on the subject of Bankruptcies,'" as consented to by the states in ratifying the U.S. Constitution and the included Bankruptcy Clause.[77]

The Supreme Court has previously declined to rule on the application of sovereign immunity waivers where a proceeding does not require extrapolating to other scenarios.[78]  Consequently, before turning to the Eleventh Amendment analysis *infra*, it is important to clarify exactly what is at issue in SBE's Motion.

SBE's Motion has sought judgment on the Tax Dispute by making jurisdictional challenges against the Determination Motion.  The parties nevertheless conflate the issue presented to the Court.[79]  La Paloma, in particular, shifts the scope of the current tax dispute in its pre-trial brief when it asks for the Court, among other things, to enter

---

[76] *Coll. Sav. Bank*, 527 U.S. at 675-76 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)) (internal quotations omitted) (citing *Gunter v Atlantic Coast Line R. Co.*, 200 U.S. 273, 284 (1906) and *Pennhurst*, 465 U.S. at 99).

[77] *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 377 (2006).

[78] *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 454-55 (2004) (citing *Liverpool, New York & Philadelphia S.S. Co. v. Comm'r of Emigration*, 113 U.S. 33, 39 (1885)) (declining to rule on the application of Eleventh Amendment immunity to exercises of *in personam* jurisdiction when that issue was not squarely before the Court).

[79] *See, e.g.*, D.I. 237, 285.

judgment "in its favor on its refund claim, including a refund of property taxes for all tax years at issue …"[80]

The Court confines its review to the language in the Determination Order and its authority under section 505. The Determination Order, as submitted by La Paloma and entered by the Court, states "[t]he Court shall determine the taxable value of the Facility for tax years 2012 through 2016 pursuant to section 505(a) of the Bankruptcy Code."[81] However, section 505(a) does not refer to a bankruptcy court's ability to determine the taxable value of a property, but the Court's ability to "determine the amount or legality of any tax, any fine or penalty relating to tax, or any addition to tax, whether or not previously assessed, whether or not paid …"[82] The Court's potential judgment as to a tax refund in La Paloma's favor is, in fact, the very concern at the center of SBE's Eleventh Amendment claims.[83] While a tax determination may in some instances be enough for relief, this instance clearly is one where La Paloma would need to recover the tax refund in order for the Court to grant judgment on the Tax Dispute.[84] Any assessment of the underlying value of the Facility without a tax refund would generate no relief in the Tax

---

[80] D.I. 1036, p. 40.

[81] D.I. 285.

[82] 11 U.S.C. § 505(a).

[83] Indeed, SBE's entire first jurisdictional argument on the limitations imposed by § 505(a)(1)(B) centers on whether the claimed tax refund has been properly requested.

[84] *See also In re Psychiatric Hosp. of Fla., Inc.*, 217 B.R. 645, 650 (Bankr. M.D. Fla. 1997). (noting that the debtor's section 505 motion had to be assessed in conjunction with the relief sought, in this case a determination of claim amounts and priority status); *cf. Katz*, 546 U.S. at 372 ("The § 547 determination, standing alone, operated as a mere declaration … [which] may be all that the trustee wants; for example, if the State has a claim against the bankrupt estate, the avoidance determination operators to bar that claim until the preference is turned over. … In some cases, though, the trustee, … will need to recover the subject of the transfer …").

Dispute, as the only items at issue are taxes *previously* paid. The assessment has already been used and the dispute does not extend to the continued use of the valuation by SBE as an assessor.

As a result, the Court must interpret the Tax Dispute as both a request to determine the value of the Facility and a claim for a potential tax refund using the readjusted valuation. La Paloma believes any sovereign immunity defense SBE could bring as to the Tax Dispute is barred because prior litigation acts invoked federal court jurisdiction and because the tax dispute falls within the waiver for bankruptcy proceedings described by the Supreme Court in *Katz*. The Court reviews each argument in turn.

### i. Consensual Waiver, Law of the Case, and Collateral Attack Issues

La Paloma begins by asserting waiver arguments centered on SBE's prior litigation acts in the Tax Dispute. La Paloma contends (1) SBE waived any Eleventh Amendment challenge with its prior litigation actions; (2) any determination on SBE's Motion would constitute a collateral attack against the Determination and Stipulated Orders; and (3) any new jurisdictional arguments are otherwise precluded by the law of the case doctrine.

### a. Voluntary Waiver through Litigation Acts

La Paloma believes SBE voluntarily invoked the jurisdiction of the Court through its "extended silence on [sovereign immunity], combined with its stipulations and actions for several months, [which] support a finding of waiver …"[85]

---

[85] D.I. 1040.

For involuntary state defendants, only a narrow set of litigation actions will constitute a state's invocation of federal court jurisdiction.[86]  In reviewing the clarity of a state's waiver, the focus must be "on the litigation act the State takes that creates the waiver."[87]  Nothing prevents "a State's ability to raise sovereign immunity when it is involuntarily brought into federal court.  It is only when a State … submits its rights for judicial determination … and unequivocally invokes the jurisdiction of the federal courts" where issues arise.[88]

In the Third Circuit, an involuntary state defendant may raise a sovereign immunity defense "for the first time on appeal even if the state defended the merits of the suit …"[89]  In order for such a state to invoke federal court jurisdiction, some other affirmative action must have taken place.[90]  Actions that invoke jurisdiction include when

[86] *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 622 (2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

[87] *Flonase*, 879 F.3d at 69 (quoting *Lapides*, 535 U.S. at 620) (internal quotations omitted).

[88] *Lombardo*, 540 F.3d at 198 (citing *Gunter*, 200 U.S. at 284).

[89] *Chittister v. Dep't of Community and Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000); *see Lombardo*, 540 F.3d at 198 n.7. The Supreme Court has upheld the use of sovereign immunity defenses on appeal for involuntary state defendants, distinguishing them from voluntary state defendants. *cf. Lapides*, 535 U.S. at 622-24 (citing *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 469 (1945)) ("The short answer to this question is that this case involves a State that *voluntarily* invokes the jurisdiction of the federal court, while *Ford* involved a State that a private plaintiff had *involuntarily* made a defendant in federal court. … [W]e consequently overrule *Ford* insofar as it would otherwise apply.").

[90] *See Ruffin v. Deperio*, 97 F.Supp.2d 346, 358 (W.D.N.Y. 2000) (citing *In re Burlington Motor Holdings Inc.*, 242 B.R. 156, 161-62 (Bankr. D. Del. 1999), etc.).

a state files a claim in bankruptcy court,[91] becomes party to a cause of action,[92] or successfully seeks removal of state or federal-law causes of action.[93]

In the context of this tax dispute, SBE must be treated as an involuntary state defendant. La Paloma filed the Determination Motion and brought the tax dispute before the Court. Indeed, were it not for the Determination Motion, SBE would have no interest in any part of La Paloma's bankruptcy proceedings. SBE has not filed a claim, it has not sought the removal of the tax dispute from state court, nor has it joined any causes of action. That SBE objected to the Determination Motion, agreed to the Stipulated Order, and waited until the eve of trial to bring its Eleventh Amendment defense does not affect its ability to bring a sovereign immunity claim. While waiting until the eve of trial may constitute grounds for a waiver in other circuits,[94] the law of the Third Circuit requires the opposite result. The crucial fact remains that SBE "never *chose* to litigate this suit in a federal forum."[95]

Neither do any of the actions highlighted by La Paloma show a "change in behavior that demonstrates [the state] is no longer defending the lawsuit and is instead

---

[91] *Gardner v. New Jersey*, 329 U.S. 565 (1947).

[92] *Gunter*, 200 U.S. at 284.

[93] *Lapides*, 535 U.S. at 613-22.

[94] *State of Arizona v. Bliemeister (In re Bliemeister)*, 296 F.3d 858, 862 (9th Cir. 2002) (citing *Lapides*, 535 U.S. at 621 and *Hill v Blind Indus. & Servs.*, 179 F.3d 754, 760 (9th Cir. 1999)).

[95] *Union Pacific R. Co. v. Louisana Public Service Comm'n*, 662 F.3d 336, 341 (5th Cir. 2011) (emphasis added) (citing *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Intern. Software, Inc.*, 653 F.3d 448, 462 (7th Cir. 2011) and *Union Elec. Co. v. Mo. Dep't of Conservation*, 366 F.3d 655, 660 (8th Cir. 2004)) (holding that a state's prior defense of the merits of a claim in district court did not constitute a voluntary invocation of federal court jurisdiction that waived a sovereign immunity defense first brought on appeal).

taking advantage of the federal forum."[96]  The act closest to an unequivocal waiver in this

instance is the jurisdictional statement in the Stipulated Order.[97]  The Stipulated Order

states, in relevant part:

> WHEREAS, the Court having jurisdiction pursuant to 28
> U.S.C. § 1334; and this being a core proceeding pursuant to 28
> U.S.C. § 157(b)(2) and, accordingly, this Court may enter
> appropriate orders and judgments including final orders with
> respect to the tax dispute; and venue being proper before this
> Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court
> having determined that a hearing (the "Hearing") will be held
> to determine the taxable value of the Facility for tax years 2012
> through 2016 pursuant to section 505(a) of the Bankruptcy
> Code on the dates set forth below and that certain deadlines
> to facilitate discovery and other pre-Hearing matters ought to
> be set.[98]

Yet, as the language in the Stipulated Order suggests, the parties' stipulations

amount to nothing more than a recitation of language previously granted by the Court in

the Determination Order, which SBE objected to initially.[99]  The highlighted acts only go

to demonstrate SBE's attempt to fight the Tax Dispute, despite what might initially

appear to be express language saying otherwise.[100]  "[M]erely because a state appears and

offers defenses on the merits of the case [ ] does not automatically waive Eleventh

---

[96] *Phx. Intern. Software*, 653 F.3d at 462 (citing *Lapides*, 535 U.S. at 620).

[97] *See* D.I. 355.

[98]  D.I. 355 at 2.

[99] *See* D.I. 237, 265.

[100] *See also Alessi by Alessi v. Com. Of Pa., Dept. of Public Welfare*, 893 F.2d 1444, 1454 (3d Cir. 1990) (J. Becker, concurring) (quoting *Atascadero State Hosp. v. Scanlon*, 472 U.S. 234, 239-40 (1985)) (finding that a waiver requires "the most express language or … such overwhelming implication … as will leave no room for any other reasonable construction.").

Amendment immunity."[101]  As a result, SBE's prior actions do not rise to the level of a voluntary invocation of federal jurisdiction nor a submission of rights for judicial determination.[102]

### b.  Collateral Attack

La Paloma next argues that allowing SBE's Eleventh Amendment defense now would constitute an impermissible collateral attack on the Determination and Stipulated Orders.

A "final judgment in a civil action may be challenged on direct review but cannot be collaterally attacked in a subsequent proceeding."[103]  Final orders "are not any the less preclusive because the attack is on the Bankruptcy Court's conformity with its subject-matter jurisdiction, for '[e]ven subject-matter jurisdiction … may not be attacked collaterally.'"[104]  Parties cannot challenge subject-matter jurisdiction in circumstances where they were part of the proceeding and given a fair chance to the Court's jurisdictional finding.[105]  To otherwise allow collateral attacks on final orders, even those

---

[101] *Borrell v. Bloomsburg Univ.*, 955 F.Supp.2d 390, 400 (M.D. Pa. 2013) (quoting *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir. 1997)) (internal quotations omitted).

[102] *Phx. Intern. Software*, 653 F.3d at 462 (citing *Atascadero*, 472 U.S. at 238 n.1); *see also Lombardo*, 540 F.3d at 198 (quoting *Gunter*, 200 U.S. at 284).

[103] *In re Uni-Marts, LLC*, 404 B.R. 767, 788 (Bankr. D. Del. 2009) (citing *Chicot Cty Drainage Dist. V. Baxter State Bank*, 308 U.S. 371, 376 (1940) and *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938)).

[104] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455, n.9 (2004)).

[105] *See Travelers Indem.*, 557 U.S. at 153 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) and *Chicot Cty*, 308 U.S. at 375).

relating to a court's jurisdiction, would undercut the principles of *res judicata* and the necessity for such a rule.[106]

But "the general rule of finality of jurisdictional determinations is not without exceptions.  Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling."[107]  Accordingly, "a collateral attack on subject-matter jurisdiction is permissible where the issue is the waiver of sovereign immunity."[108]  This is not to suggest that all sovereign immunity defenses can be allowed as collateral attacks,[109] but as described by Judge Easterbrook such second bites at the apple are particularly appropriate where a sovereign's immunity defense is "an effort … [by the sovereign] to seek the protections of its own courts …"[110]

This Court decided the issue of jurisdiction over the valuation of the Facility in an earlier proceeding.  SBE's Objection in that proceeding made several arguments implicating the Court's jurisdiction unrelated to sovereign immunity.  At oral argument, SBE reiterated these arguments.  The Court nevertheless granted the Determination

---

[106] *Id.* at 154.

[107] *Durfee v. Duke*, 375 U.S. 106, 114 (1963) (citing *Kalb v. Feuerstein*, 308 U.S. 506 (1940) and *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 514 (1940)).

[108] *Travelers Indem.*, 557 U.S. 137, 153 n.6 (quoting *United States Fidelity*, 309 U.S. at 514) (internal quotations omitted).

[109] *See U.S. v. County of Cook, Ill*, 167 F.3d 381, 386 (7th Cir. 1999) (denying an attempt by the United States to seek immunity from liability after arguing, appealing, and losing a case on the merits, arguing that such an attempt was a collateral attack and to otherwise allow the defense "would reduce to advisory status all decisions adverse to the financial interests of the United States.").

[110] *Lapides*, 535 U.S. at 623 (citing *United States Fidelity*, 309 U.S. at 506) (distinguishing *United States Fidelity* partially for its attempt to seek immunity from suit); *Cty of Cook, Ill*, 167 F.3d at 391-92 (interpreting *United States Fidelity* to apply chiefly to immunity from suit defenses that would strip a court of proper subject-matter jurisdiction).

Order noting its "ability to exercise jurisdiction over this matter under 505" and choosing to "exercise that jurisdiction, and … grant the motion."[111]  The Determination Order, which SBE did not appeal, and the later agreed-to Stipulated Order both contain statements confirming the Court's jurisdictional ruling.  In telling fashion, SBE's Motion is styled no less than as a jurisdictional challenge to the original Determination Motion.[112] On its face then, SBE's sovereign immunity argument appears to be a collateral attack.

The Court recognizes, however, the unique nature of the sovereign immunity defense.  First, as explained in detail *supra*, the Determination Motion and Order, obfuscated whether La Paloma intended to seek an assessment of the taxable value of the Facility only, or also request judgment on its alleged claim for a tax refund.[113]  Second, SBE's argument hinges on its immunity from suit under the Eleventh Amendment.  If SBE's defense is successful, the result will be the removal of the Court's subject-matter jurisdiction.  Where a case, like this one, appears to demonstrate "the absence of subject-matter jurisdiction with a [sovereign] litigant's disdain of the tribunal" defenses on immunity from suit should be allowed to proceed.[114]  These types of collateral attacks

---

[111] D.I. 356, Hr'g Tr. 45:14-16, 46: 18-20. Notably, the Court only made "facial" findings as to whether the tax dispute fulfilled the elements of section 505. Given that section 505 is a jurisdictional statute, arguments like the § 505(a)(1)(B) analysis *supra* are also "not waivable and may be raised at any time, including on appeal …" *Custom Distribution Servs.*, 224 F.3d at 240 n.4 (citing *Weaver v Bowers*, 657 F.2d 1356, 1360 (3d Cir. 1981) (en banc)).

[112] *See* D.I. 1040.

[113] *Compare* D.I. 237, ¶¶ 20-22 *with id.* ¶ 15, Exh. A.

[114] *Cty of Cook, III*, 167 F.3d at 389-90 (citing *United States Fidelity*, 309 U.S. at 509).

uphold the Constitutional protections granted to involuntary state defendants "to ignore proceeding instituted against [them] in the wrong court."[115]

The Court finds that a collateral attack is permissible in this "rare situation[ ]" concerning an issue of immunity from suit.[116]

### c. Law of the Case

La Paloma finally implores the Court to reject SBE's sovereign immunity defense under the law of the case doctrine.

In general, once "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[117]  Applying this view, the Third Circuit has defined the law of the case doctrine as a principle that "limits the extent to which an issue will be reconsidered once the court has made a ruling on it."[118] The law of the case generally "directs a court's discretion, [but] does not limit the tribunal's power."[119]  A trial court may consequently reconsider an issue addressed in an earlier ruling if it would clarify an ambiguity or, even if the ruling is unambiguous, prevent clear error or an unjust result.[120]  If a judge does overturn a decision, it must state

---

[115] *Id.*

[116] *Travelers Indem.*, 557 U.S. 137, 153 n.6.

[117] *Arizona v. California*, 460 U.S. 605, 618 (1983).

[118] *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982)).

[119] *Arizona v. California*, 460 U.S. at 618; *see Messenger v. Anderson*, 225 U.S. 436, 444 (1912).

[120] *See, e.g., Fagan*, 22 F.3d at 1290; *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979); *Al Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997).

the reason for the change on the record and must take appropriate steps to ensure "the parties are not prejudiced by reliance on the prior ruling."[121]

As explained *supra*, the Court's past ruling must yield to the jurisdictional concerns potentially at issue in SBE's immunity defense. Both Supreme Court and Third Circuit law give states significant deference in making sovereign immunity arguments in the later stages of a proceeding, even after a merits hearing.[122] Both parties were able to fully brief SBE's Motion and make arguments for and against the application of sovereign immunity, which limits the prejudice La Paloma might otherwise face.

Given the unique nature of SBE's sovereign immunity and the limited prejudice to the opposing party, the Court declines to reject SBE's argument on law of the case grounds.

### ii.    Waiver under Ratification by Consent Doctrine

La Paloma lastly argues that this proceeding is of the type consented to by the states in their ratification of the Bankruptcy Clause. The Third Circuit has not squarely addressed the Supreme Court's decision in *Katz* and its waiver of sovereign immunity for certain bankruptcy proceedings. Consequently, the Court has treated SBE's argument as a matter of first impression, beginning with a review of caselaw since *Seminole Tribe* and then turning to the issue at hand.

---

[121] *Swietlowich*, 610 F.2d at 1164.

[122] *See, e.g., Lombardo*, 540 F.3d at 198; *In re Hechinger*, 335 F.3d at 251; *Chittister*, 226 F.3d at 227; *Travelers Indem.*, 557 U.S. at 153 n.6; *Lapides*, 535 U.S. at 622-24; *United States Fidelity*, 309 U.S. at 506.

### a.   Developments in *Seminole Tribe*, *Hood*, and *Katz*

In *Seminole Tribe*, the Supreme Court determined that Congress did not have authority under Article I of the Constitution to abrogate state sovereign immunity, although it maintained authority to do so pursuant to §§ 1 and 5 of the Fourteenth Amendment.[123]  In dissent, Justice Stevens raised concerns over how *Seminole Tribe* might affect Congress's ability to create a federal forum for certain actions, including bankruptcy.[124]  In response, the majority noted that "it has not been widely thought that the federal … bankruptcy … statute[] abrogated the States' sovereign immunity. The Court never has awarded relief against a State under … [the] statutory scheme[ ]."[125]

Two years later, the Third Circuit applied the logic of *Seminole Tribe* to section 106(a) of the Bankruptcy Code.  Revised and enacted under the Bankruptcy Reform Act of 1994, 11 U.S.C. § 106 expressed Congressional intent to abrogate sovereign immunity for certain bankruptcy proceedings.[126]  Among other things, the statute states:

> Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to … [section] 505.[127]

---

[123]  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67-73 (1996).

[124] *Id.* at 77.

[125]  *Id.* at 73 n.16.

[126] Pub L. No. 103-394, 108 Stat. 4106 (1994).

[127] 11 U.S.C. § 106(a)(1).

After assessing the statutory scheme, the Third Circuit held "§ 106(a) … unconstitutional to the extent that it purports to abrogate state sovereign immunity in federal court."[128] Most, but not all, circuit courts agreed with the Third Circuit on this result.[129]

The Supreme Court twice set out to resolve the circuit split on whether § 106(a) constituted a valid Congressional abrogation of state sovereign immunity, first in *Tennessee Student Assistance Corp. v. Hood* and later in *Cent. Va. Cmty. Coll. v. Katz.*

In *Hood*, a debtor signed promissory notes for educational loans guaranteed by the Tennessee Student Assistance Corporation, a government corporation created by the state in order to administer student loans.  Hood filed a Chapter 7 bankruptcy petition and received a general discharge, which did not cover the aforementioned student loans. Later that same year, Hood reopened her petition and sought a determination, through an adversary proceeding, that her loans were dischargeable.[130]  The bankruptcy court ultimately concluded that the student loans were dischargeable and rejected any sovereign immunity concerns, a decision upheld twice on appeal.[131]

The Supreme Court in *Hood* set out to decide whether the Bankruptcy Clause in Article I of the Constitution granted "Congress the authority to abrogate state sovereign

---

[128] *Sacred Heart Hospital v. Dept. of Public Welfare (In re Sacred Heart Hospital)*, 133 F.3d 237, 245 (3d Cir. 1998).

[129] *See Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 761 (6th Cir. 2003) (citing *Nelson v. La Crosse Cnty. Dist. Attorney (In re Nelson)*, 301 F.3d 820, 832 (7th Cir. 2002); *Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1121 (9th Cir. 2000); *Sacred Heart Hospital*, 133 F.3d at 243; and *Fernandez v. PNL Asset Mgmt. Co. LLC (In re Fernandez)*, 123 F.3d 241, 243 (5th Cir.), *amended by* 130 F.3d 1138, 1139 (4th Cir. 1997), *cert. denied*, 523 U.S. 1075 (1998)).

[130] *See Hood*, 541 U.S. at 448; *Katz*, 546 U.S. at 443-45.

[131] *Id*. at 445.

immunity from private suits."[132]  The *Hood* court nevertheless affirmed the decision of

the lower courts on narrower grounds, determining "a proceeding initiated by a debtor

to determine the dischargeability of a student loan debt is not a suit against the State for

the purposes of the Eleventh Amendment."[133]  The court found that the discharge of a

debt was an "*in rem* proceeding" premised on the debtor and their estate.[134]  Specifically

the court noted:

> Under our longstanding precedent, States, whether or not they choose to
> participate in the proceeding, are bound by a bankruptcy court's discharge
> order no less than other creditors. … We [have] held that if a state desires
> to participate in the assets of a bankruptcy she must submit to the
> appropriate requirements. … At least when the bankruptcy court's
> jurisdiction over the res is unquestioned … our cases indicate that the
> exercise of its *in rem* jurisdiction to discharge a debt does not infringe state
> sovereignty.[135]

The Court explained that "[b]ecause the court's jurisdiction is premised on the res,

however, a nonparticipating creditor cannot be subjected to personal liability."[136]  As to

the states, the holding in *Hood* "is not to say a bankruptcy court's *in rem* jurisdiction

overrides sovereign immunity … Nor do[es it] hold that every exercise of a bankruptcy

court's *in rem* jurisdiction will not offend the sovereignty of the States."[137]

---

[132] *Id.* at 443.

[133] *Id.* at 447.

[134] *Id.*

[135] *Id.* at 448 (quoting *New York v. Irving Trust Co.*, 288 U.S. 329, 333 (1933)) (internal quotations omitted) (citing *Gardner*, 329 U.S. at 574; *United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992); and *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 102 (1989)).

[136] *Id.* (citing *Freeman v. Alderson*, 119 U.S. 185, 188-89 (1886)).

[137] *Id.* at 451 n.5.

Finally, the court declined to extend its conclusion to a bankruptcy court's exercise of *in personam* jurisdiction over a state.  There was no need to reach such a conclusion, since "the Bankruptcy Court would still have authority to make the undue hardship determination Hood seeks" as an *in rem* proceeding.[138]

Two years later, the Supreme Court again considered the question of "whether Congress' attempt to abrogate state sovereign immunity in 11 U.S.C. § 106(a) is valid" by reviewing a proceeding pursuant to §§ 547(b) and 550(a) to avoid and recover alleged preferential transfers to state agencies.[139]   In an opinion by Justice Stevens, the *Katz* majority again averted the abrogation question and reframed the issue:

> The relevant question is not whether Congress has "abrogated" States' immunity in proceedings to recover preferential transfers. *See* 11 U.S.C. § 106(a).  The question, rather, is whether Congress' determination that States should be amendable to such proceedings is within the scope of its power to enact "Laws on the subject of Bankruptcies."[140]

In so concluding, the court refused to abide by the dicta set out in the majority and dissenting opinions in *Seminole Tribe*, since "[t]he history of the Bankruptcy Clause … demonstrate[s] that it was intended not just as a grant of legislative authority to Congress, but also to authorize limited subordination of state sovereign immunity in the bankruptcy arena."[141]

---

[138] *Id*. at 442.

[139] *Katz*, 546 U.S. at 361.

[140] *Id*. at 379.

[141] *Id*. at 362-63.

*Katz* then turns to whether this limited waiver of sovereign immunity included the avoidance of preferential transfers. The majority begins by rehashing the jurisdictional hook from *Hood*, explaining:

> Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction. … In bankruptcy, the court's jurisdiction is premised on the debtor and the estate, and not the creditors. … As such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected.[142]

The court notes that the Farmers would have understood the Bankruptcy Clause not just to include "simple adjudications of rights in the res" but also "order[s] … ancillary to and in furtherance of the court's *in rem* jurisdiction, [which] might itself involve *in personam* process."[143] This does "not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon sovereign immunity[,]" but jurisdiction will extend to proceedings that effectuate the *in rem* jurisdiction of bankruptcy courts.[144]

*Katz* does not explicitly provide the contours for this more expansive jurisdiction. The court does, however, note several "critical features of every bankruptcy proceeding[,]" including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and

---

[142] *Id.* (quoting *Hood*, 541 U.S. at 447) (internal quotations omitted) (citations omitted).

[143] *Id.* at 371-72.

[144] *Id.* at 378 n.15.

49

the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."[145]

Notably, however, the court acknowledges that the "proper characterization of such [preference] actions is not as clear as petitioners suggest."[146]  *Katz* distinguished the preferential transfer action at issue there with a similar action in *Nordic Village*, observing the action at issue in *Katz* was for the recovery of *both* the "value" of the preference and of the actual "property transferred." In comparison, the action in *Nordic Village* only sought a "sum of money, not particular dollars."[147]

The court, nevertheless, found no reason to expound further on the nature of preferential transfers.  Since "[w]hatever the appropriate appellation[,] … the power to authorize courts to avoid preferential transfers and to recover the transferred property … has been a core aspect of the administration of bankrupt estates since at least the 18th century."[148]  The historical background *by itself* allows for preference actions to "operate[ ] free and clear of the State's claim of sovereign immunity."[149]

The majority concludes by finding that "Congress may, at its option either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws.  Its power to do so arises

---

[145] *Id.* at 363-64 (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

[146] *Id.* at 372 n.10.

[147] *Id.*

[148] *Id.* 372.

[149] *Id.* at 373.

from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute."[150]

### b.  Consent by Ratification Waiver Applied to the Tax Dispute

As a threshold matter, *Katz* stipulates that federal courts should steer clear from inquiring into whether Congress properly abrogated sovereign immunity pursuant to section 106(a).  As the Eleventh Circuit describes, "*Katz* did not directly address the constitutionality of § 106(a) or the viability of the 'congressional abrogation' theory, the *Katz* Court made clear that the Bankruptcy Clause—and not … § 106(a)—represents the source of any subordination of state sovereign immunity …"[151]  Furthermore, this Court must continue to consider the Third Circuit's holding in *Sacred Heart* as good law. Consequently, "§ 106(a) of the Bankruptcy Code may not be relied upon … to defeat … [an] assertion of sovereign immunity" in this circuit today.[152]

After *Hood* and *Katz*, federal courts are thus left to piece together how to contemplate the full scope of the sovereign immunity waiver as consented to by the states in their ratification of the Bankruptcy Clause.  To the extent a proceeding falls under the waiver, any Eleventh Amendment sovereign immunity defense must be found waived. The analysis *infra* reviews the Tax Dispute for this consent-by-ratification waiver.

---

[150] *Id.* at 378; *see also id.* at 376 n.13 ("That Congress is constrained to enact laws that are uniform in application, whether geographic or otherwise … does not imply that it *lacks power* to enact bankruptcy legislation that is uniform in a more robust sense … As our holding today demonstrates, Congress has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment of state and private creditors.").

[151] *In re Diaz*, 647 F.3d 1073, 1084 (11th Cir. 2011) (quoting *Katz*, 546 U.S. at 378) (internal quotations omitted).

[152] *In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. 103, 121 (Bankr. E.D. Pa. 2016), *rev'd on other grounds* (citing *In re Hammond*, 156 B.R. 943, 947-48 (E.D. Pa. 1993)).

### 1.  *In rem jurisdiction*

To the extent a section 505 determination of tax liability squarely fits the *in rem* jurisdiction of the bankruptcy court, there is relatively little need for further inquiry into the applicability of *Katz*.[153]  If the action is purely *in rem*, it will not constitute a suit subject to the Eleventh Amendment under *Hood*, but more ambiguous proceedings will still fall within the *Katz* waiver where the proceeding effectuate administration of *in rem* jurisdiction.[154]

The Tax Dispute requires a bifurcated review of *in rem* jurisdiction.  The Court must consider whether *either* the underlying debtor property or the prior tax payments create enough of an *in rem* hook to ensure that the Tax Dispute as litigated in this Court is an *in rem* proceeding.

The Court first considers whether *in rem* jurisdiction exists through the Tax Dispute's connection to the Facility.  Two conflicting pre-*Katz* cases closely parallel the issue here: *In re Metromedia Fiber Network* and *In re Cable & Wireless*.  The Court begins by assessing the views therein.

In *Metromedia*, the Bankruptcy Court for the Southern District of New York reviewed adversary proceedings contesting property valuations of certain taxable property allegedly grossly in excess of fair market value, but which were used by several taxing entities as part of an attempt to collect *ad valorem* taxes.  The bankruptcy court was

---

[153] *See Katz*, 546 U.S. at 371-72; *but see In re Soileau*, 488 F.3d 302, 313 n.1 (5th Cir. 2007) (Jones, J. concurring) (arguing that certain *in rem* proceedings may be limited by *Katz*, if they offend some traditional state sovereignty).

[154] *Cf. id.* at 371 (reviewing the Court's conclusions in *Hood*).

asked to ascertain the fair market value of the taxable property in question in order to prevent the tax claims.[155]

*Metromedia* reviewed whether "a proceeding to determine the amount of a tax assessment, or the calculation of a tax … entail[s] conflicting claims to a *res*." The court determined such a proceeding did not,[156] explaining:

> … the debtors ask this Court only to determine the value of the debtors' Taxable Property for purposes of determining tax assessments under state law. Jurisdiction over the state defendants is *in personam*, not *in rem*. The Section 505 complaints do not constitute *in rem* proceedings because evaluation for assessment purposes does not and cannot determine or affect any property rights in the Taxable Property. It is true, of course, that the appraisal and assessment process concerns property of the debtors' estates, but a bankruptcy court's *in rem* jurisdiction over a debtor's property is limited to the bankruptcy *administration* of that property, to wit, the adjudication of interests in and the disposition of the debtor's property. Merely calculating state and local taxes by evaluation, appraisal or assessment of property (i) does not affect the property itself, (ii) does not affect the debtor's, trustee's, or anyone else's right, title or interest in or to the property, (iii) does not affect the debtor's estate, and (iv) has nothing to do with bankruptcy administration or the *in rem* jurisdiction of the bankruptcy court. *In rem* bankruptcy jurisdiction is invoked only when a tax claim is filed or the taxing authority takes affirmative steps to collect taxes from or impose a lien upon property of the debtor's estate.[157]

While *Metromedia* predates *Katz*, the above analysis is nevertheless supported by *Katz*'s description of *in rem* jurisdiction. *Katz* highlights "the three critical *in rem* functions of bankruptcy courts: [1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and

---

[155] *In re Metromedia Fiber Network, Inc.*, 299 B.R. 251, 256 (Bankr. S.D.N.Y. 2003).

[156] *Id.* at 271.

[157] *Metromedia*, 273-74

[3] the ultimate discharge that gives the debtor a 'fresh start' …"[158] These three functions do not conflict with the findings in *Metromedia*, in fact, they comport with the court's description of *in rem* jurisdiction as centered on the administration of the res.

In *Cable & Wireless*, Judge Peterson, sitting as a visiting judge in this bankruptcy court, reviewed what was perceived to be a similar issue regarding certain claims objections of the debtor to state tax claims, including a challenge to the valuation underlying the taxes.[159]   In finding that the tax assessment was not a suit subject to Eleventh Amendment immunity, the court determined that *Metromedia*'s analysis of *in rem* jurisdiction conflicted with *Hood*'s holding that a bankruptcy court could adjudicate a debtor's discharge without exerting *in personam* jurisdiction over the state.[160]

The Court cannot, however, agree with all the findings drawn in *Cable & Wireless*. *Hood* centered on the issue of dischargeability, which fall within the administration and disposition of property within the bankruptcy estate.  There is no reason to believe that the majority in *Hood* contemplated expanding *in rem* jurisdiction beyond those rights and claims actually tied to the res.  In fact, this is the only way to take seriously the focus on *in rem* jurisdiction.   *Hood* ultimately dealt with a suit wherein the state wished to participate in the assets of the bankruptcy proceeding, in contrast SBE seeks nothing of the sort from this Tax Dispute.  The distinction is notable because, since "the court's jurisdiction is premised on the res … a nonparticipating creditor cannot be subjected to

---

[158] *Diaz*, 647 F.3d at 1084 (quoting *Katz*, 546 U.S. at 363-64) (internal quotations omitted).

[159] *In re Cable & Wireless USA, Inc.*, [hereinafter *Cable & Wireless*] 331 B.R. 568, 571-72 (Bankr. D. Del. 2005).

[160] *Id*. at 576 (citing *Hood*, 541 U.S. at 453).

personal liability."[161]  In this case, however, the rights at issue do not actually tie to the res.  As explained by the *Metromedia* court above, the right to a tax refund under California state law evaluates the Facility, but to the extent an *in rem* connection exists, it exists as a state tax claim or under the pre-paid funds.  The rights do not flow from the Facility, but from La Paloma, who maintains the refund claim based on pre-paid tax funds.

More importantly, *Cable & Wireless*'s belief that *Hood* is purely an *in rem* proceeding was openly revisited in *Katz*.  Describing the broader ancillary *in rem* jurisdiction of the bankruptcy court, Justice Stevens noted:

> Our decision in *Hood* illustrates this point.  As the dissenters in that case pointed out, it was at least arguable that the particular procedure that the debtor pursued to establish dischargeability of her student loan could have been characterized as a suit against the State rather than a purely *in rem* proceeding.  *See* 451 U.S., AT 455-456, 124 S.Ct. 1905 (THOMAS, J., dissenting).  But because the proceeding was merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction, we held that it did not implicate state sovereign immunity.[162]

These words, while written in dicta, must be reviewed as persuasive authority in understanding the *Hood* decision, from which *Katz* clearly follows.[163]  If the discharge itself is ancillary to the *in rem* jurisdiction of the bankruptcy court, the connection to the res must come from the underlying debt that implicates the estate, otherwise the above

---

[161] *Id.* (citing *Freeman v. Alderson*, 119 U.S. 185, 188-89 (1886)).

[162] *Katz*, 546 U.S. at 371.

[163] *See Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 273-74 (3d Cir. 2007) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) and *In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000)) (concluding Supreme Court dicta is highly persuasive and not viewed lightly, since otherwise failing to take seriously dicta from relevant Supreme Court decisions frustrates the administration of justices constrained by their limited docket).

paragraph retains no significance. This further supports the view that a claim for a tax refund must stem from previously paid funds or directly from the state law claim.

That Judge Peterson bases his *Hood* analysis on *Gardner v. New Jersey* further supports the view that *in rem* jurisdiction is not so easily found here. *Gardner* purely focuses on the jurisdiction of the bankruptcy court when a claim has been filed by the state as an actor against the estate, where the "whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests in a res."[164] The other case cited favorably by *Cable & Wireless* for the proposition that a tax determination is an *in rem* proceeding, *Psychiatric Hosp. of Florida*, also faces this issue of focusing on the debt/creditor relationship. In that case, the relief sought by the debtor was solely a reduction of claims and determination of priority status.[165] Both of these forms of relief squarely fall within the logic of *Gardener* and are inapposite to the case at hand.

But even if *Gardener* were the logical centerpiece of *Hood*, a bankruptcy court's *in rem* jurisdiction would still need to focused on adjudications of interests in the underlying res, which as noted in *Metromedia*, is not at play in a tax assessment with regard to the underlying property.[166] Section 505 adjudications like this Tax Dispute do not actually affect rights in the Facility. It is not enough that the underlying California state law looks to the Facility in assessing the tax issue. A tax refund determination *may* affect the estate

---

[164] *Cable & Wireless*, 331 B.R. at 572 (quoting *Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947)) (internal quotations omitted).

[165] *Psychiatric Hosp. of Fla., Inc.*, 217 B.R. at 650.

[166] *See Metromedia*, 299 B.R. at 273.

in a manner that would lead to *in rem* jurisdiction, but that would be in connection to unpaid taxes taken directly from the estate or from prepaid taxes already taken out of the estate.  An analysis of that issue is to be found *infra*.

The Court next considers whether La Paloma's prior tax payments make the current tax assessment *in rem*.

To begin, the Court notes that merely because the estate may have a claim for a tax refund is not enough to invoke the *in rem* jurisdiction of a bankruptcy court.  Some have suggested that the inferences in *Katz* could extend so broadly as to include the pure liquidation of claims held by the estate.[167]  But "[w]hile the Debtor's interest in a cause of action does inure to the benefit of its estate, it cannot be said that interest constitutes a *res* that implicates this Court's *in rem* jurisdiction."[168]  If that were the case, the *Katz* court would have had no issue ruling that the preference action at issue there was an *in rem* proceeding, and it would broaden the scope of *Katz* endlessly.[169]

Similarly, *in rem* jurisdiction is not created by bluntly asking for a lump sum of value.  *Katz* has been distinguished from *Nordic Village, Inc.*, another preference action reviewed by the Supreme Court which determined an *in rem* exception to sovereign immunity was unavailable.  The *Katz* court concluded that the preference in *Nordic Village* did not invoke the *in rem* jurisdiction of the bankruptcy court because it only asked for a

---

[167] Susan M. Freeman & Marvin C. Ruth, *The Scope of Bankruptcy Ancillary Jurisdiction After Katz as Informed by Pre-Katz Ancillary Jurisdiction Cases*, 15 Am. Bankr. Inst. L. Rev. 155, 178 (2007).

[168] *Philadelphia Entm't*, 549 B.R. at 150 n.54.

[169] *See id.*

"sum of money."  In contrast, the preference in *Katz* sought both the "value" of the preference *and* the return of the actual "transferred property," pursuant to §§ 547 and 550.[170]  The distinction drawn between these cases is crucial, as it remains in dispute "whether states intended to submit themselves to suit for retroactive money damages."[171] The fact that the *Katz* preference sought the actual funds transferred removed the concern regarding the *in rem* connection.[172]

To the extent a res is still in this Tax Dispute, it must stem from the actual funds paid pre-petition to SBE.  There is no question that had this request for a tax assessment been connected to the payment of *post-petition* funds the tax assessment would fall within a bankruptcy court's *in rem* jurisdiction.[173]  Such a tax determination would clearly attach to specific funds that are already within the bankruptcy estate.[174]  A similar conclusion would likely affect any unpaid tax assessments disputed within a bankruptcy.

Analogous cases have waived sovereign immunity for tax determinations by underscoring a bankruptcy court's ability to discharge and assess the amount of a debt pursuant to a tax assessment, albeit none of them considered a situation where judgment

---

[170] *Katz*, 546 U.S. at 372 n.10.

[171]  Joseph Pace, *Bankruptcy As Constitutional Property: Using Statutory Entitlement Theory to Abrogate State Sovereign Immunity*, 1119 YALE L.J. 1568, 1574 (2010).

[172] The *Katz* dissent notes that the majority's distinction between asking for generic funds, as in *Nordic Village*, and actual funds transferred, as in *Katz*, creates "no practical distinction." However, the Court notes that in this Tax Dispute the significance is of great importance since it removes the possibility that a simple state law claim for money damages falls within the *Katz* waiver, as opposed to a collection of the actual funds from the tax collector, i.e. Kearn County. *See Katz*, 546 U.S. at 392 (J. Thomas, dissenting).

[173] *See In re Indianapolis Downs, LLC*, 462 B.R. 104, 110 (Bankr. D. Del. 2011).

[174] *Id.*

on a tax refund was requested.[175]  In *Lake Worth Generation*, however, a bankruptcy court suggested that a determination of a debt owed is, in fact, *less* of an affront on sovereign immunity than the discharge of specific debt.[176]

The *Lake Worth* court's conclusion is correct in that the focus must be on the underlying debt, i.e. whom it is owed to and in what amount.  It is for this exact reason that the Tax Dispute, as it relates to SBE, cannot attach to the prepaid taxes.  Both parties agree that the taxes in this Tax Dispute were collected by Kearn County, not by the SBE.  Thus, to the extent *in rem* jurisdiction exists as to this tax refund claim it exists against Kearn County, not SBE.  As other courts have demonstrated, claims against a tax assessor are more than appropriate when challenging the assessment of taxes pre-payment, but the party of interest changes once payment occurs.[177]  Claims against a tax collector, however, are more appropriate when the dispute is over a claim actually filed.[178]

The Court finds that this Tax Dispute, wherein La Paloma seeks funds already paid to a collector, similar to the latter case.  The actual funds at issue trace their delivery to Kearn County; the Court cannot locate a discrete res under which to justify suit against the SBE.  What La Paloma contests here is nothing more than a state law claim for a sum of dollars.  To disallow a sovereign immunity defense in this situation would be to erase

---

[175] *See*, e.g., *Fla. Furniture Indus., Inc. v. Mahaffey*, 342 B.R. 838, 840 (Bankr. M.D. Fla. 2005) (citing *In re Lake Worth Generation, LLC*, 318 B.R. 894, 904).

[176] *In re Lake Worth Generation, LLC*, 318 B.R. 894, 904 (Bankr. S.D. Fla. 2004) (emphasis added).

[177] *See Psychiatric Hosp. of Fla.*, 217 B.R. at 648.

[178] *See Fla. Furniture Indus.*, 342 B.R. at 838-39.

the distinction made between *Katz* and *Nordic Village*, and to allow a wholesale suit for money damages.[179]

It is also irrelevant that California has structured its tax payment structure to funnel tax refund suits through the SBE.  The law is clear that "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."[180] The sovereign immunity waiver under *Katz* is clear—the waiver must stem from the res, which in this case goes back to a potential set of funds improperly acquired by Kearn County.  Indeed, the very fact that La Paloma had a parallel case against Kearn County, which could not partake in SBE's Motion as a non-state entity, is further support for this conclusion.[181]

This Court accordingly concludes that no purely *in rem* jurisdiction would allow the current Tax Dispute against SBE to yield the remedies sought by La Paloma. Nevertheless, this is not the end of the inquiry, as the Court must now consider the Tax Dispute's possible ancillary connection to *in rem* jurisdiction.[182]

### 2.  *Ancillary to in rem jurisdiction*

The *Katz* waiver does not merely apply to simple *in rem* adjudications, but also those ancillary orders necessary to effectuate the *in rem* jurisdiction of the Court.  While courts have not settled on a single set of criteria under which to evaluate such

---

[179] *Katz*, 546 U.S. at 372 n.10.

[180] *Coll. Sav. Bank*, 527 U.S. at 676 (citing *Smith v. Reeves*, 178 U.S. 436, 441-45 (1900)).

[181] *See* section *infra* on the uniform treatment of creditors for a further discussion on the difference in treatment for various governmental units.

[182]

proceedings ancillary to *in rem* jurisdiction, it is far from certain that a section 505 assessment for a tax refund will fit these requirements.  Indeed, one bankruptcy court recently found, in dicta, that section 505(a) did not fulfill these requirements.[183]

As described by Judge Walsh in *In re DBSI, Inc.*, any attempt to plainly categorize a proceeding as one type of jurisdiction or another forces courts into "blurred distinctions and perplexing case law."[184]   A court should instead, taking from *Katz*, consider two factors: (1) whether the relevant law applies uniform treatment between state and private creditors, and (2) then whether the activities constitute core aspects of bankruptcy administration through either its history or effect on the estate.[185]

The Court first reviews for section 505's application of the uniformity requirement. To the extent bankruptcy laws do not add to uniform treatment of creditors, such laws may be removed from the consent-by-ratification waiver.[186]

If Congress "treats [s]tates in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt[s] them from operation of such laws" their legislative action is valid.[187]   This inquiry does not ask courts to examine Congressional abrogation of sovereign immunity under section 106(a), but reviews whether Congress has exercised its power to enact bankruptcy laws providing for uniform treatment and within limits established by *Katz*.

---

[183] *Patriot Coal*, 562 B.R. at 646 n.74 (quoting *Metromedia*, 299 B.R. at 283).

[184]  *Zazzali*, 463 B.R. at 714 (citing *Katz*, 546 U.S. at 371-73).

[185] *See id; see also Diaz*, 647 F.3d at 1082-84.

[186] *See Katz* 546 U.S. at 376 n.13.

[187] *Id*. at 379.

The *Katz* majority determined "Congress has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment of state and private creditors."[188]  This uniformity requirement, however, "does not imply that it *lacks power to enact bankruptcy legislation that is uniform in a more robust sense.*"[189] Historical powers associated with the Bankruptcy Clause support the notion that this uniformity requirement cannot limit all entrance into sovereign powers.[190]  In *Katz*, the Supreme Court spent considerable time discussing early bankruptcy legislation concerning the issuance of "writs of habeas corpus directed at state officials ordering the release of debtors from state prisons."[191]  Forcing states to release prisoners was clearly, at the time, an infringement on state sovereign immunity by imposing requirements on proceedings normally implicating only sovereign powers.[192]

Analogizing the laws adopted around habeas corpus and bankruptcy to section 505, the Court determines that the ability to seek an assessment in bankruptcy court does aid in the uniform treatment of state and private creditors.  Section 505 can be utilized by both creditors and debtors, respects state administrative proceedings related to taxes, and implicates governmental entities of all types.  That section 505 effects taxes, which are

---

[188] *Id.*

[189] *Id.* (citing Randolph J. Haines, *The Uniformity Power: Why Bankruptcy is Different*, 77 AM. BANKR. L.J. 129, 158-72 (2003)).

[190] Haines, *The Uniformity Power*, 173-87 (describing how the enforcement of writs of habeas corpus exclusively in federal courts could only be understood to divest states of their sovereign powers).

[191] *Katz*, 546 U.S. at 363.

[192] *Id.* at 378 n.14 ("One might object that the writ of habeas corpus was no infringement on state sovereignty … While that objection would be supported by precedent today, it would not have been apparent to the Framers.").

inherently governmental activities, does not mean that the law is not uniform. Section 505 implicates all governmental entities assessing and collecting taxes, including counties, cities, and the federal government, none of which receive the same Eleventh Amendment protections granted to states.[193]   La Paloma concedes this exact point in explaining to the Court that its parallel litigation with Kearn County does not implicate the same Eleventh Amendment concerns.[194]

A tax assessment under section 505 is thus a more straightforward case for uniformity of treatment than the very examples used to explain the holding in *Katz.* Supreme Court law on uniformity implicates more than geographic immunity, but does not prevent section 505 from applying uniformity in this broader sense.[195]

The Court next reviews whether the Tax Dispute aids in the core administration of the bankruptcy proceedings.  A proceeding's connection to the core administration of a bankruptcy can extend from historical roots or from practical effects.

In order for historical subtext to generate the necessary connection the proceeding must be "core aspects of the administration of the bankrupt estates since at least some point in the eighteenth century."[196]   Historical connections have been used to justify the

---

[193] *See* COLLIER ON BANKRUPTCY TAXATION ¶ TX.504[2]; *cf. N. Ins. Co. of N.Y. v. Chatham Cnty*, 547 U.S. 1289, 193 (2006) (holding state sovereign immunity does not extend to county); *Workman v. New York*, 179 U.S. 552, 570 (1900) (imposing jurisdiction over a municipal corporation as non-sovereign).

[194] D.I. 1063 (arguing that La Paloma's Determination Motion does not constitute a "suit" under *Cable & Wireless*, but conceding the same argument cannot apply to its suit with Kearn County).

[195] *Katz*, 546 U.S. at 376 n.13 (disputing that the uniformity requirement only applies to geographic uniformness).

[196] *Zazzali*, 463 B.R. at 715 (citing *Katz*, 546 U.S. at 372 and Richard Lieb, *State Sovereign Immunity: Bankruptcy is Special*, 14 Am. Bankr. Inst. L. Rev. 201, 230 (2006)).

collection of preference actions and fraudulent transfers in a bankruptcy context.  Indeed, where historical connections exist, there usually is no need for further analysis as to whether such proceedings fall under the *Katz* waiver.[197]  The Court easily dismisses this argument as it relates to the Tax Dispute since the adjudication of non-claims based tax disputes, particularly focusing on already paid taxes, dates back approximately sixty years, a far cry from the history used to support preference and fraudulent transfer actions.[198]

Nevertheless, as explained by the Eleventh and Third Circuits, proceedings may be ancillary to *in rem* proceedings wherein they functionally serve the administration of the res.[199]  Courts have generally reviewed ancillary proceedings on the basis that they must connect to one of the core *in rem* processes of the bankruptcy court: "[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a 'fresh start' …"[200]

In certain situations one cannot doubt that "Section 505 [is] clearly the heart and soul and an indispensable part of the administration of the estate under the Bankruptcy Code."[201]   The Court has gone exhaustively through the various types of tax

---

[197] *Id.; but see Nordic Village* 503 U.S. at 30.

[198] *See In re EUA Power Co.*, 184 B.R. 631, 634-35 (Bankr. D. N.H.  1995) (reviewing the legislative history behind section 505 and assessment of taxes).

[199] *See, e.g., In re Allen*, 768 F.3d 274, 279-80; *Diaz*, 647 F.3d at 1084.

[200] *Id.*

[201] *Psychiatric Hosp. of Fla.*, 217 B.R. at 649.

64

determinations that may impact the estate in a way that supports the broad statement above. Nevertheless, the Court cannot all section 505 proceedings "in a vacuum," instead one must see whether the relief sought actually, not formalistically, supports the administration of the bankruptcy.[202]

This issue with the Tax Dispute, at least as it relates to SBE, is that there is no real estate administration accomplished here that cannot be done accomplished in the suit against Kearn County. Litigation of the dispute against Kearn County has "already accomplished its purpose of preserving the assets of the estate …" as it relates to the tax refund.[203] Where the purpose of a claim is best served elsewhere, such a proceeding cannot be considered core to bankruptcy courts' *in rem* functions. Such a conclusion is starker still in this Tax Dispute, since a potential money judgment against SBE seemingly goes beyond the realm of "ancillary orders" and into the adjudication of the *in rem* proceedings themselves.[204] That the *in rem* analysis above does not squarely support a tax refund claim against SBE in this bankruptcy court demonstrates that the Tax Dispute is "too remote" to create the necessary nexus to the bankruptcy's administration.[205]

\*\*\*

---

[202] *Id.; see Diaz*, 647 F.3d at 1086 (citing *Florida Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1314 (11th Cir. 2007), *withdrawn pursuant to settlement*, No. 06-11655-II, 2007 WL 6813797 (11th Cir. June 26, 2007) (unpublished)).

[203] *Diaz*, 647 F.3d at 1086.

[204] *Cf. In re Allen*, 768 F.3d at 280.

[205] *Id.*

For the reasons set forth above, the Court finds that SBE has not consented to suit through litigation actions, and the Tax Dispute falls outside the contours of the *Katz* consent-by-ratification waiver.

This conclusion does not implicate the current litigation against Kearn County, nor does it implicate any action by La Paloma to seek enforcement of assessment for future taxes or unpaid taxes.  Nevertheless, the Tax Dispute and the underlying valuation of the Facility can only generate a judgment for a tax refund claim.  In this regard, SBE's sovereign immunity defense is proper and the Tax Dispute must be dismissed from this Court.

## CONCLUSION

Under section 505(a)(2)(B)(i), this Court has jurisdiction to hear the Determination Motion, however, La Paloma's request would be limited to the amount La Paloma sought before the Board.  Furthermore, La Paloma is barred from seeking a refund for the tax year 2012, as it agreed to a unitary value with the SBE and, thus, did not exhaust its administrative remedies.

In addition, the Court grants SBE's Eleventh Amendment immunity defense, as SBE has neither waived its argument by consent nor waived its immunity under the consent-by-ratification waiver established in *Katz*.

SBE's Motion will be GRANTED.  An Order will be issued.